19-MJ-7305-JCB

## AFFIDAVIT OF FBI SPECIAL AGENT TIMOTHY KENNY

I, Special Agent Timothy Kenny, being sworn, state as follows:

## INTRODUCTION

1.      I have been a Special Agent with the Federal Bureau of Investigation ("FBI") since 2014.  For much of that time, I have been engaged in gang and drug investigations.  I am currently assigned to the FBI, Boston Office.  In this role, I work with numerous agents and law enforcement officers who investigate drug distribution and trafficking throughout the United States.   In particular, I have been assigned to investigate the drug distribution activities of Michael PRIDGEN and his co-conspirators who have been distributing crack cocaine and heroin/fentanyl in and around the Boston, Massachusetts area.

2.      In the course of participating in investigations of drug trafficking, I have conducted and participated in surveillance, the purchase of illegal drugs, the execution of search warrants, debriefings of subjects, witnesses, and informants and reviews of consensually recorded conversations and meetings.  Through my training, education, and experience, I have become familiar with the manner in which drug traffickers conduct their illegal drug trafficking activity, which includes the use of cellular telephones to communicate with customers, associates and sources of drug supply.

3.      Based on my training and experience, I know that it is a violation of Title 21, U.S.C., § 841(a)(1), for any person to knowingly or intentionally to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance.  I am also aware that cocaine is listed as a Schedule II controlled substance, under the drug scheduling guidelines.    I further know that it is a violation of Title 21, U.S.C., § 860, for any

person to violate Title 21, U.S.C., § 841(a)(1), within one thousand feet of a housing facility owned by a public housing authority.

4.      I make this affidavit in support of a criminal complaint charging Michael PRIDGEN (DOB xx-xx-1984) with illegally possessing and distributing Schedule II controlled substances in violation of 21 U.S.C. § 841(a)(1) and violating 21 U.S.C. § 841(a)(1) within one thousand feet of a housing facility owned by a public housing authority in violation of 21 U.S.C. § 860.

5.      The statements contained in this affidavit are based on my own work in this investigation, my training and experience, and information provided by other agents, police officers, and witnesses.  This affidavit is submitted for the limited purpose of establishing probable cause to believe that PRIDGEN violated 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 860.  It therefore does not set forth all of the information that I and other law enforcement personnel have obtained during the course of the investigation.

## OVERVIEW OF INVESTIGATION

6.      Since approximately April of 2019, the FBI and Boston Police Department ("BPD") have been investigating drug trafficking by Michael PRIDGEN and his co-conspirators in the Boston area of MA.  PRIDGEN, himself a Heath Street gang member, heads a successful drug trafficking organization, in which he employs Heath Street gang members to facilitate the distribution of cocaine, cocaine base, heroin, and fentanyl, and to oversee the collection of drug proceeds.

7.      According to the BPD, the Heath Street Gang is one of the largest gangs in the city with nearly 100 individuals believed to be actively associated with it.  For many years, the Heath Street Gang has been involved in an ongoing dispute with a group from the area of Holworthy

2

Street in Roxbury known as "H-Block" (as well as several other more sporadic disputes with other area groups) that has been one of the most active disputes in the city.

8.      The Heath Street Gang is known to frequent the Mildred C. Hailey Apartment Complex ("the Hailey Apartments") located in Boston, MA. The Hailey Apartments are one of many housing developments owned and/or operated by the Boston Housing Authority to provide housing for low and moderate-income residents.  The Hailey Apartments are generally bounded by Centre Street, Heath Street, Walden Street, and Columbus Avenue in Jamaica Plain/Boston, MA.  It is one of the larger housing developments owned by the Boston Housing Authority and generally houses more than 1,000 residents.

### USE AND RELIABILITY OF A COOPERATING WITNESS; IDENTIFICATION OF MICHAEL PRIDGEN AS A DRUG DEALER

9.      Over the course of the investigation, Special Agents of the FBI and Detectives of the BPD have received information concerning the illegal drug trafficking of PRIDGEN and his co-conspirators from a Cooperating Witness ("CW-1").

10.      CW-1 has provided information about PRIDGEN and his co-conspirators to include their methods of distribution, telephone numbers used to facilitate distribution, and locations used to facilitate drug trafficking activity.

11.      CW-1 has a criminal history including arrests for assault and battery, disorderly conduct, drug possession, larceny offenses, malicious destruction of property, and motor vehicle offenses, and including convictions for operating a motor vehicle with a suspended license, larceny by check, malicious destruction of property, assault and battery, and larceny.   CW-1 also has a history of drug abuse, and the FBI ceased using CW-1 for controlled buys in July 2019 after learning that, during the time period when CW-1 was also serving as a Cooperating Witness, CW-1 had separately made a purchase of drugs from PRIDGEN for personal use.

12.     Nonetheless, the information that CW-1 provided has been corroborated and I consider the information provided by CW-1 to be reliable.  CW-1 cooperated with law enforcement for over five years.  CW-1 is cooperating to receive financial compensation.

13.     Over the course of the investigation, CW-1 has conducted at least five controlled purchases of controlled substance evidence and conducted recorded meetings and phone calls with PRIDGEN and his co-conspirators. These recorded meetings and calls have provided evidence of PRIDGEN's operation of his drug trafficking organization.  The investigation has revealed that PRIDGEN employs co-conspirators both to redistribute amounts of heroin, fentanyl, crack cocaine, and cocaine (between one gram and 21 grams) and to serve as look-outs and/or protection during the transactions.

14.     On June 5, 2019, Special Agent Michael Little administered a photographic array consisting of eight photographs to CW-1.  The photographic array contained seven "fillers" that were obtained from the Joint Automated Booking System and a photograph of MICHAEL PRIDGEN.  Special Agent Little had no knowledge of the identity of the possible subject.  Special Agent Little read aloud instructions from a Photo Array Check List and presented the photographic array in sequential order to CW-1.  CW-1 identified the subject in photograph 3 as "Michael Pridgen" who sold CW-1 crack cocaine.  CW-1 signed photograph 3.  Photograph 3 was the photograph of PRIDGEN.

**PROBABLE CAUSE**

**June 5, 2019 Purchase of 3.2 Grams of Cocaine Base**
**from PRIDGEN Inside Hailey Apartments**

15.     On June 5, 2019, at approximately 4:26 p.m., I directed CW-1 to conduct a consensually recorded call with PRIDGEN at telephone number 857-302-8490 to arrange to purchase crack cocaine from PRIDGEN.  CW-1 asked PRIDGEN how much it would cost to buy an "8-ball".  I know, based on my training and experience conducting controlled purchases and debriefing informants including CW-1, that CW-1 used the term "8-ball" to describe a 3.5 gram quantity of crack cocaine.  PRDIGEN stated, "$175."  CW-1 asked if PRIDGEN would agree to sell it for $160.  PRIDGEN agreed.  PRIDGEN agreed to meet CW-1 in twenty minutes to complete the transaction.

16.     At approximately 4:53 p.m., Task Force Officer Patrick O'Brien and I equipped CW-1 with covert electronic recording and transmitting equipment that was being simultaneously monitored by agents, and provided CW-1 with $160 in Official Agency Funds, which was to be used to make the crack cocaine purchase.  While under the surveillance of law enforcement officers, CW-1 traveled to the area of the Hailey Apartments to meet with PRIDGEN.[1]  While walking to the area, CW-1 called PRIDGEN at telephone number 857-302-8490.  PRIDGEN directed CW-1 to go to 287 Centre Street.[2]

17.     At approximately 5:04 p.m., CW-1 met with PRIDGEN outside of 287 Centre Street.  PRIDGEN and CW-1 entered 287 Centre Street together and walked into the stairwell.  PRIDGEN removed a plastic bag containing suspected crack cocaine and a digital scale from a

---

[1] Prior to meeting with PRIDGEN, law enforcement searched CW-1 for money and contraband, with negative results except for $221.00 in U.S. currency.
[2] 287 Centre Street is a building within the Hailey Apartments and is a housing facility owned by a public housing authority.

brown electrical box affixed to the wall in the stairwell.  PRIDGEN sat on the stairs and began weighing the suspected crack cocaine on the digital scale.  CW-1 placed $160 in Official Agency Funds on the stair next to PRIDGEN.  PRIDGEN asked CW-1 to grab a plastic bag from the brown electrical box.  CW-1 retrieved a plastic bag from the brown electrical box and handed the plastic bag to PRIDGEN.  PRIDGEN packaged an amount of suspected crack cocaine in the plastic bag and handed it to CW-1.

18.     At approximately 5:06 p.m., surveillance agents observed CW-1 exit 287 Centre Street.  CW-1 proceeded directly to a pre-arranged meeting location as directed by surveillance agents.  CW-1 turned over a clear plastic bag containing suspected crack cocaine and I debriefed CW-1 regarding the events of the controlled purchase.

19.     Special Agent William McDermott and I transported the plastic bag of suspected crack cocaine to the FBI office.  The plastic bag was placed on a digital scale and showed a weight of 3.2 grams.  I conducted a field test of the suspected crack cocaine using a TruNarc Raman Spectrometer.  The substance tested positive for the presumptive presence of cocaine base.  The plastic bag and suspected crack cocaine was logged in as FBI evidence.  The evidence package was sent to the Drug Enforcement Administration Northeast Laboratory for further analysis.

20.     I reviewed the video recording and the recording corroborates the above account of the controlled purchase.  I viewed the video recording of the controlled purchase and, comparing it to PRIDGEN's license photo, determined the seller to be PRIDGEN.

### July 2, 2019 Purchase of 21.1 Grams of Cocaine Base from PRIDGEN Inside Hailey Apartments

21.     On July 2, 2019, at approximately 1:40 pm, I directed CW-1 to conduct a consensually recorded call with PRIDGEN at 857-302-8490 to arrange to purchase crack cocaine from PRIDGEN.  On the recorded call, CW-1 told PRIDGEN that s/he wanted a "Z."  I know,

based on my training and experience conducting controlled purchases and debriefing informants including CW-1, that CW-1 used the term "Z" to describe an ounce quantity of crack cocaine.  PRIDGEN told CW-1 that he was "out here" and told CW-1 to "come on."  CW-1 knew from numerous prior interactions with PRIDGEN that PRIDGEN would complete the deal in the area of the Hailey Apartments.

22.     At approximately 2:02 pm, Task Force Officer O'Brien and I equipped CW-1 with covert electronic recording and transmitting equipment and provided CW-1 with $1,300 in Official Agency Funds, which was to be used to make the crack cocaine purchase.  At approximately 2:02 pm, while under the surveillance of law enforcement officers, CW-1 traveled to the area of the Hailey Apartments.[3]  At approximately 2:16 pm, CW-1 entered 295 Centre Street and met with PRIDGEN in a stairwell.[4]

23.     PRIDGEN asked CW-1, "Where'd you get this money from?... Are you working for the police?"  CW-1 explained to PRIDGEN that CW-1 was only making $50 on the deal.  PRIDGEN then produced a bag containing crack cocaine and heroin or fentanyl.  CW-1 handed PRIDGEN $1,300 in Official Agency Funds.  PRIDGEN told CW-1 he would give CW-1 "six and a half baskets" and would give CW-1 some of the money back.  I know, based on my training and experience conducting controlled purchases and debriefing informants, that "basket" is a term used to describe a 3.5 grams quantity of drugs, so 6.5 baskets is 22.75 grams; an ounce is just over 28 grams.  PRIDGEN handed CW-1 a plastic bag containing suspected crack cocaine. PRIDGEN counted out $150 in Official Agency Funds and returned it to CW-1.  CW-1 then left the stairwell.

---

[3] Prior to meeting with PRIDGEN, law enforcement searched CW-1 for money and contraband, with negative results except for $5.00 in U.S. currency.
[4] 295 Centre Street is a building within the Hailey Apartments and is a housing facility owned by a public housing authority.

24.     At approximately 2:18 pm, surveillance officers observed CW-1 exit 295 Centre Street and walk to a convenience store.  CW-1 purchased a drink inside the store.[5]  CW-1 then left the store and proceeded directly to a pre-arranged meeting location as directed by surveillance agents.  CW-1 turned over a clear plastic bag containing suspected crack cocaine and the returned $150 of Official Agency Funds and I debriefed CW-1 regarding the events of the controlled purchase.

25.     Task Force Officer O'Brien and Task Force Officer David Butler transported the plastic bag of suspected crack cocaine to the FBI office.  The plastic bag was placed on a digital scale and showed a weight of 21.1 grams.  Task Force Officer O'Brien conducted a field test of the suspected crack cocaine using a TruNarc Raman Spectrometer.  The substance tested positive for the presumptive presence of cocaine base.  The plastic bag and suspected crack cocaine were logged in as FBI evidence.   The evidence package was sent to the Drug Enforcement Administration Northeast Laboratory for further analysis.

26.     I reviewed the video recording and the recording corroborates the above account of the controlled purchase.  I viewed the video recording of the controlled purchase and, comparing it to PRIDGEN's license photo, determined the seller to be PRIDGEN.

---

[5] CW-1 communicated to surveillance officers that s/he believed s/he was being followed by PRIDGEN's associates and that is why CW-1 entered the convenience store.

## **CONCLUSION**

Based on the foregoing, I submit that there is probable cause to believe that, on June 5, 2019, and July 2, 2019, MICHAEL PRIDGEN did distribute and possess with intent to distribute Schedule II controlled substances in violation of Title 21, United States Code, Section 841(a)(1), and did so within one thousand feet of the Hailey Apartments, a housing facility owned by a public housing authority, in violation of 21 U.S.C. §860.

I declare that the foregoing is true and correct to the best of my knowledge and belief.


TIMOTHY KENNY
SPECIAL AGENT, FBI


Subscribed and sworn to before me this 9th day of September, 2019.


JENNIFER C. BOAL
UNITED STATES MAGISTRATE JUDGE
DISTRICT OF MASSACHUSETTS